2025R00275/NKP/HH/JRE

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Hon. Karen M. Williams |
| v. | Crim. No. 25-405 |
| BORIS D. VEYSMAN | 18 U.S.C. § 1349 21 U.S.C. § 846 |

# I N F O R M A T I O N

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges:

1.  Unless otherwise indicated, at all times relevant to this Information:

**The Defendant, Individual 1, and Pharmacy 1**

  a. Defendant BORIS D. VEYSMAN ("VEYSMAN") was a resident of New Jersey and a medical doctor licensed by the State of New Jersey. VEYSMAN maintained a U.S. Drug Enforcement Administration ("DEA") registration number in New Jersey, which allowed him to issue prescriptions for Schedule II through Schedule V controlled substances so long as they were for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. VEYSMAN owned a medical practice in New Jersey.

  b. Individual 1 was a resident of New Jersey and owned Pharmacy 1, which was located in New Jersey. Pharmacy 1 was an enrolled Medicare provider that submitted claims to Medicare.

## The Medicare Program

c. The Medicare Program ("Medicare") was a federally funded health care program that provided free or below-cost benefits to certain individuals, primarily individuals 65 years of age and older and individuals with disabilities. The benefits available under Medicare were governed by federal statutes and regulations. Medicare was administered by the Centers for Medicare and Medicaid Services, a federal agency within the U.S. Department of Health and Human Services.

d. Medicare was a "health care benefit program," as defined in Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined in Title 42, United States Code, Section 1320a-7b(f). Individuals who received Medicare benefits were referred to as "beneficiaries."

e. Medicare was divided into four parts: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D). Medicare Part B covered medically necessary physician office services, outpatient care, and items.

f. Physicians, clinics, pharmacies, and other health care providers (collectively, "providers") that provided items and services to Medicare beneficiaries were able to apply for and obtain a "provider number." Providers that received a Medicare provider number were able to submit claims to Medicare to obtain reimbursement for items and services provided to beneficiaries.

g. Claims submitted to Medicare seeking reimbursement were required to include: (i) the beneficiary's name; (ii) the date upon which the benefit,

item, or service was provided or supplied to the beneficiary; (iii) the name of the provider; and (iv) the provider's unique identifying number, known either as the Unique Physician Identification Number ("UPIN") or National Provider Identifier ("NPI"). Claims seeking reimbursement from Medicare were able to be submitted in hard copy or electronically.

   h. Medicare paid for claims only if the items or services were medically reasonable, medically necessary for the treatment or diagnosis of the patient's illness or injury, documented, and actually provided as represented to Medicare. Medicare would not pay for items and services that were procured through kickbacks and bribes.

### Pharmacy Claims

   i. In order to receive Part D benefits, a beneficiary enrolled in a Medicare drug plan. Medicare Part D plans were offered through private insurance companies, or "sponsors," that Medicare approved. A beneficiary in a Medicare drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription.

   j. Medicare would not pay for items or services that were medically unreasonable or unnecessary, procured through kickbacks and bribes, or not provided as represented.

### The Controlled Substances Act

   k. The Controlled Substances Act ("CSA"), codified in Title 21 of the United States Code, and its promulgating regulations, classified drugs into five

schedules depending on a drug's acceptable medical use and its potential for abuse and dependency.

l. Schedule I controlled substances, such as heroin, did not have an acceptable medical use, while Schedule II through Schedule V controlled substances did.

m. Schedule II controlled substances, such as oxycodone, methadone, morphine, amphetamine, and branded drugs containing the same, had a high potential for abuse, and abuse of such a drug or other substance could lead to severe psychological or physical dependence.

n. Schedule III controlled substances, such as buprenorphine, and branded drugs containing the same, had potential for abuse, and abuse of such a drug or other substance could lead to moderate or low physical dependence or high psychological dependence.

o. Schedule IV controlled substances, such as alprazolam, clonazepam, lorazepam, and branded drugs containing the same, had a low potential for abuse, and abuse of such a drug or other substance could lead to limited physical or psychological dependence.

p. The CSA authorized Schedule II through Schedule V controlled substances to be dispensed to individuals with a valid prescription.

q. Title 21, Code of Federal Regulations, Section 1306.04 governed the issuance of prescriptions and provided, among other things, that a prescription

for a controlled substance "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice."

   r. Title 21, Code of Federal Regulations, Section 1306.04 further provided that "[a]n order purporting to be a prescription issued not in the usual course of professional treatment . . . is not a prescription within the meaning and intent of [the CSA] and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances."

   s. The New Jersey Administrative Code established additional limitations for prescribing, administering, and dispensing controlled substances (described as "controlled dangerous substances" under state regulations). For example, the New Jersey Administrative Code provided that a physician licensed by the State of New Jersey "shall not issue a prescription for a Schedule II controlled dangerous substance, unless the licensee has had an initial in-person examination of the patient and a subsequent in-person visit with the patient at least every three months for the duration of the time the patient is prescribed the Schedule II controlled dangerous substance." N.J. Admin. Code § 13:35-2C.6(c).

## COUNT 1
### (Conspiracy to Commit Health Care Fraud)

2.  The allegations set forth in paragraphs 1.a–j of this Information are re-alleged here.

3.  Beginning at least in or around May 2023, and continuing through at least in or around December 2024, in the District of New Jersey and elsewhere, the defendant,

**BORIS D. VEYSMAN,**

did intentionally and knowingly combine, conspire, confederate, and agree with Individual 1 and others, known and unknown, to knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, a health care benefit program, as that term is defined under Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, any health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, contrary to Title 18, United States Code, Section 1347.

### Goal of the Conspiracy

4.  It was the goal of the conspiracy for VEYSMAN, Individual 1, and others to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare for prescription medications that were procured through the payment of illegal

6

kickbacks and bribes, medically unreasonable and unnecessary, and ineligible for Medicare reimbursement; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds of the fraud; and (c) diverting proceeds of the fraud for their personal use and benefit, for the use and benefit or others, and to further the fraud.

## Manner and Means of the Conspiracy

5. It was part of the conspiracy that:

a. VEYSMAN solicited and received illegal kickbacks and bribes from Individual 1 in exchange for prescriptions that Pharmacy 1 used to bill Medicare.

b. Individual 1 paid VEYSMAN illegal kickbacks and bribes in exchange for VEYSMAN issuing prescriptions recommended by Individual 1 to Medicare beneficiaries Individual 1 referred to VEYSMAN .

c. Many of the medications VEYSMAN prescribed at Individual 1's request were medically unnecessary because VEYSMAN did not examine the patients and often prescribed the medications based solely on a short text message interaction or no interaction at all.

d. VEYSMAN, Individual 1, and others concealed and disguised the scheme, including by transacting the illegal kickbacks and bribes in cash and by creating falsified medical records that made it appear as though VEYSMAN was treating the beneficiaries Individual 1 referred to him.

e. In total, VEYSMAN caused the submission of more than approximately $7 million in false and fraudulent claims to Medicare for prescriptions that were procured through illegal kickbacks and bribes, medically unreasonable and unnecessary, and/or ineligible for Medicare reimbursement. Medicare paid Pharmacy 1 more than approximately $7 million for these claims.

In violation of Title 18, United States Code, Section 1349.

## COUNT 2
**(Conspiracy to Unlawfully Distribute Controlled Substances)**

6. Paragraphs 1.a and 1.k–s of this Information are realleged here.

7. Beginning at least in or around January 2023, and continuing through at least in or around December 2024, in the District of New Jersey and elsewhere, the defendant,

**BORIS D. VEYSMAN**,

did knowingly and intentionally conspire and agree with others to distribute and dispense, without a legitimate medical purpose and outside the usual course of professional practice, mixtures and substances containing detectable amounts of Schedule II controlled substances, contrary to Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

In violation of Title 21, United States Code, Section 846.

## FORFEITURE ALLEGATION

Upon conviction of the federal health care fraud offense alleged in Count 1 of this Information, BORIS D. VEYSMAN, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), all property, real or personal, the defendant obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of such offense.

Upon conviction of the violation of the Controlled Substances Act alleged in Count 2 of this Information, BORIS D. VEYSMAN, the defendant, shall forfeit to the United States, pursuant to Title 26, United States Code, Section, all property constituting or derived from proceeds the defendant obtained directly or indirectly as a result of such offense; all property used or intended to be used in any manner or part to commit and to facilitate the commission of such offense; and all property traceable to such property.

### Substitute Assets Provision

If any of the property described above, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

*Alina Habba*

ALINA HABBA
United States Attorney

JESSICA ECKER
Assistant United States Attorney


LORINDA LARYEA
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice


*[signature]*

NICHOLAS K. PEONE
HYUNGJOO HAN
Trial Attorneys
Criminal Division, Fraud Section
U.S. Department of Justice

CASE NUMBER: 25-405

# United States District Court
# District of New Jersey

**UNITED STATES OF AMERICA**

v.

**BORIS VEYSMAN**

## INFORMATION FOR

**18 U.S.C. § 1349**
**21 U.S.C. § 846**

ALINA HABBA
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

JESSICA R. ECKER
ASSISTANT U.S. ATTORNEY

NICHOLAS K. PEONE
HYUNGJOO HAN
TRIAL ATTORNEYS

NEWARK, NEW JERSEY
973-645-2700